NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar #13644
STEPHANIE N. IHLER
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
(702) 388-6336
Stephanie.Ihler@usdoj.gov

*Attorneys for United States of America*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TYREE WALKER and<br><br>RICARDO DENSMORE,<br><br>Defendants. | Case No: 2:20-mj-00464-BNW<br><br>SUPPLEMENT TO GOVERNMENT'S EMERGENCY MOTION FOR DISTRICT COURT REVIEW OF MAGISTRATE'S ORDER TO RELEASE DEFENDANTS WALKER AND DENSMORE ( ECF Nos. 6, 9, and 11) |

The United States of America, by and through the undersigned, submits this supplement in support of the government's Motion for District Judge Review of Magistrate Judge's Release of Defendants Walker and Densmore, and in response to the Defendant's Emergency Motion for Immediate Release. ECF Nos. 6, 9, and 11. For the reasons set forth below, the government respectfully requests that the District Court review the Magistrate's order for release under United States Code 3145(a). The government further requests that the District Court revoke the order of release and enter an order detaining the defendants, as the evidence demonstrates that the defendants present a significant risk of danger to the community and a serious risk of flight.

## I.  FACTS SURROUNDING THE INSTANT CASE

The offense charged in the complaint occurred just after midnight on May 31, 2020.  Las Vegas Metropolitan police officers had parked police patrol units in the area of East Carson and South 9th Street, which is a mixed residential and business area.  Police were in the area due to the protests relating to the death of George Floyd.  Seeing the parked unattended patrol units, the defendants poured a flammable liquid, believed to be gasoline, from a red gas can into the broken or missing window of one of the patrol units, used a butane lighter and a white unidentified object to ignite the liquid, then threw the gas can with additional flammable liquid into the police car, causing a conflagration that required the Fire Department to suppress and extinguish it, causing a risk of explosion and irreparable damage to the vehicle.  The defendants videoed themselves in the act of setting the fire and posted it to social media. *See* Exhibit 1[1].

Exhibit 1 (the video) shows that defendant Walker poured liquid from the red gas can onto a white object.  The defendants can be heard discussing pouring the liquid directly on the patrol vehicles.  Walker approached the patrol vehicle, where he was joined by Haynes who was carrying the gas can.  The video shows that Walker ignited the white object using a butane lighter through a broken or missing front passenger side window.

Walker stood next to Haynes while Haynes then poured liquid from the gas can through the broken window into the vehicle. Walker dropped the white object, which was on fire, into the patrol vehicle.  Haynes dropped the gas can inside the patrol vehicle. As the fire ignited, the sound of an approaching police siren can be heard. The defendants fled on foot as the video immediately ends.  Defendant Densmore was the individual videoing these acts.

---

[1] The government will be submitting a manual filing of Exhibit 1 & Exhibit 2 on Monday, June 8, 2020, but due to the impending hearing, the government emailed the court clerk and defense counsel copies of the video.

2

Upon arrest and post-*Miranda*, on June 3, 2020, each defendant was interviewed and admitted setting the police vehicle on fire.

## II.  RELEVANT PROCEDURAL HISTORY

On June 4, 2020, the government filed a complaint against defendants Tyree Walker ("Walker"), Devarian Haynes ("Haynes"), and Ricardo Densmore ("Densmore), charging all defendants with one count of Conspiracy to Commit Arson, in violation of 18 U.S. C. § 844(n) and Arson, in violation of 18 U.S.C. §§ 844(i) and 2. *See* ECF No. 1. All defendants made their initial appearances on the complaint on June 5, 2020.

At the detention hearing, Pre-Trial Services recommended detention for defendants Walker and Densmore as both a flight risk and danger noting that based on the lack information it was able to gather, there was no condition or combination of conditions that could ensure the safety of the community or that the defendants would appear for further proceedings. The pre-trial services report stated that the recommendation to detain was based in part on "unresolved concerns about the inability to verify" any of the defendants' information.

The government requested the defendants' detention as a risk of flight and a danger to the community.[2] The government based its argument on the serious nature and circumstances of the offenses charged including the potential penalties, the overwhelming weight of the evidence, the history and characteristics of the defendants including the lack of Pre-Trial Service's ability to verify where defendants would reside, and danger to the community if they were released.  Defendants Densmore and Walker requested release with conditions, each

---

[2] The Government based its argument under 18 U.S.C. § 3142(e)(3)(E).  However during the hearing, the fact that the Arson charge gives rise to a rebuttable presumption for detention was not addressed by the parties or the Magistrate Judge. *See* 18 U.S.C. §§ 3142(e)(3)(C), 2332b(g)(5)(B).

3

arguing significant community ties and that conditions could be fashioned to mitigate danger to the community or risk of flight.

Defendant Haynes requested a continuance until Monday, June 8, 2020; his bail status is therefore not the subject of this motion. With regard to defendants Walker and Densmore, Magistrate Judge Weksler found that the government had not met its burden to establish that Walker or Densmore posed a risk of flight or danger to the community. Magistrate Judge Weksler stated that the charges were very serious offenses with a lengthy potential penalty, and that the weight of the evidence was strong and favored the government (citing the video of the events and the defendants' confessions). The Magistrate also noted Densmore's previous failures to appear in 2014, 2016, and 2018, however, she also noted that he had strong family ties. Additionally, the Magistrate discussed the potential danger posed by Defendants' release, she stating that although the defendants presented a serious risk of danger during the underlying offense, the incident needed to be looked at "in context" of the protest. The Magistrate stated that that the charged offenses "existed within specific set of circumstances," and when considering the offense within that context, she determined that the defendants did not pose a risk of future danger to the community. The Magistrate then held that conditions could be fashioned to ensure the safety of the community, found that the defendants Walker and Densmore are not a flight risk, and ordered their release with conditions. The government announced its intent to seek review of the release orders under 18 United States Code Section 3145(a), and requested the court stay its release order so that the government could seek review by the District Court. The Magistrate denied the government's request, saying that there was no authority for the request.

The government immediately filed an Emergency Motion to Stay the court's decision. (ECF No. 6). This Court granted the government's motion for a stay and ordered Defendants

1  Walker and Desmore to be detained pending this Court's review. (ECF No. 7).

2  On June 6, 2020, Attorneys for Defendants Walker and Densmore filed an Emergency
3  Motion for Immediate Release.[3] (ECF No. 9 and 11.)

### III.  LEGAL STANDARD

Upon appeal under 18 U.S.C. § 3145(a), the District Court with original jurisdiction over the charged offense has jurisdiction to review a Magistrate Judge's release *de novo*, with no deference to the Magistrate Judge's decision. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990); *see also United States v. King*, 849 F.2d 485, 491 (11th Cir. 1988); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).  The District Court may also hear additional evidence and argument if it so chooses. *Id.*

On a motion for pretrial detention, the government bears the burden of showing that the defendant is either a danger to the community by clear and convincing evidence or that defendant is a risk of flight by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 406-07 (9th Cir. 1985).

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g).The charged offense of Arson, 18 U.S.C. § 844(i), is among the enumerated offenses that carry a presumption that no condition or

---

[3] The Court has addressed the authority for a district court to stay a release order pending review under 18 U.S.C. Section 3145. *See* ECF No. 10. .

5

combination of conditions will be sufficient to permit a defendant to be released on bond, *see* 18 U.S.C. §§ 3142(e)(3)(C), 2332b(g)(5)(B), and therefore gives rise to a presumption of detention. This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that he is neither a danger nor a risk of flight. See *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" *id.*, because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States v. Stone*, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

### IV.   ARGUMENT

The factors to be considered in the detention analysis show that defendants Walker and Densmore present a severe and ongoing danger to the community and a serious risk of flight if released on bond. Because the law presumes that there is no set of conditions that will reasonably assure the defendants' appearance or the safety of the community, the government requests the defendants be detained as a danger and a flight risk pending trial.

   a. **Nature and Circumstances of the Offenses Charged and Weight of the Evidence.**

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence, a Federal crime of terrorism, or a crime involving an explosive or destructive device. See 18 U.S.C. § 3142(g)(1).

Indeed, Congress recognized the seriousness of the charged offense by specifically

enumerating 18 U.S.C. § 844(i) among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Specifically, Section 844(i), which carries a maximum term of 20 years imprisonment, is "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed," see 18 U.S.C. § 3142(e)(3)(C), and therefore gives rise to a presumption of detention.

The defendants face a mandatory minimum sentence of five years' imprisonment and up to 20 years' imprisonment. The prospect of a lengthy term of incarceration may reasonably incentivize the defendants to flee and thus establishes the defendants' status as a serious risk of flight. *United States v. Dodge*, 846 F. Supp. 181, 184- 85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

With regard to the nature of the offense, Arson is a dangerous crime—particularly when a fire is set during protest. It is dangerous not only the first responders, but also to peaceful protesters and innocent bystanders, businesses, and residences in the area. In this case, the defendants set fire to a police car, apparently without regard to potentially igniting the car's gas tank or any ammunition in the vehicle, causing even more destruction and requiring additional first responders to navigate their way through an already chaotic scene.

The weight of the evidence in this case is overwhelming. The defendants recorded themselves laughing and setting fire to the LVMPD vehicle. Moreover, all three defendants made post-*Miranda* confessions. Although weight of the evidence is not accorded as much weight in this analysis, 18 U.S.C. § 3142(g) nevertheless requires the Court to consider the nature of the offense and evidence of guilt, and may be considered in relation to the likelihood that defendants will pose a danger to the community if released. *See Motamedi*, 767 F.2d at 1408 (9th Cir. 1985); *cf. United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) ("[e]vidence of guilt

is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community").

The fact that defendants participated on video in an arson to which both confessed, and the severity of the punishment they face if convicted, cause this factor to weigh heavily in favor of detention.

    b. **Defendants' History and Characteristics**

        **1. Defendant Desmore**

With regard to Densmore, the government addressed his criminal history and prior failures to appear to support risk of flight. Specifically, that Densmore had been convicted of Domestic Assault and Battery in 2019 for beating a female victim with an aluminum pole; had been arrested for contempt of court; and had prior failures to appear in 2014, 2016, and 2018. Also supporting detention was that the pretrial services report indicated that Pretrial was unable to verify information as to Densmore's background or residential history, employment or financial history, or his prior physical and mental health.

At the detention hearing, Desmore presented the name of a "friend" he could reside with. The court took a short recess for Pre-trial Services to contact this individual. Pre-trial Services then informed the court that they spoke with the female friend and confirmed that she said that Desmore could reside there. No other vetting of the residence or the friend was done. The Magistrate Judge then immediately ordered defendant Desmore released to this friend.

The government objects to releasing a defendant without any vetting of the person with whom the defendant is to reside. While the hour was late, it continues to be the government's position that the "friend" was not shown to be an appropriate third party custody that would ensure the defendant is not a danger or a flight risk.

### 2. Defendant Walker

Walker told Pretrial Services that he could stay with his half-brother (with whom he was purportedly living), but that individual was not willing to verify any of Walker's information or that Walker could return to the half-brother's residence[4]. Walker claimed to be employed at a gas station and would be able to return working there if released. When Pre-Trial Services contacted the business manager, he confirmed that Walker had worked there, but was already on his last chance prior to the underlying offense, and would not be able to return working there.

In support of release, Defendant Walker had an individual claiming to be his mother testify telephonically during the detention hearing, who stated that Walker could reside with his uncle if released. Walker's mother was unable to provide the uncle's exact address, but Walker spoke up and stated it was 1212 Poniac Ave. At no time was the uncle's name and contact information provided so that the Court or Pre-Trial Services could confirm from the uncle that he was willing to let Defendant Walker reside with him. Nor was pre-trial able to vet the uncle's residence and personal characteristics to confirm that he would qualify to be a third party custodian.

Despite the lack of the aforementioned crucial information, the Magistrate ordered Walker "released to Uncle." While defense counsel claims in her motion that she has verified her client's community ties and the residence, the record as it stands is devoid of evidence that this living arrangement with an uncle who has in no way been vetted by Pretrial Services will serve to ensure the safety of community or mitigate risk of flight.

---

[4] The government conducted a search warrant at a residence where defendant Walker stated he was living. However, the roommate who presented himself to law enforcement indicated that he and not Walker was the lessee, and that Walker was not on the lease. He further did not identify himself as having any relationship to Walker. Additionally, when the roommate learned that Walker had a firearm at the residence, he told police that he (the roommate) could not reside where there was a firearm. He gave no further explanation.

c. **Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Person's Release**

The defendants pose a severe and ongoing risk to the community. The actions of the defendants were not confined to an isolated incident. A second video recording demonstrates that the Defendants continued to repeatedly cause damage to LVMPD vehicles at least three different times on the night of the offense. *See* Exhibit 2. First they stood on the car, then they bashed in a windshield and window of the police vehicle (or so they joked), then in the last incident the defendants chose to destroy the vehicle completely by lighting it on fire. Even more concerning than just the number of incidents, is the defendants' escalation of violence with each offense. The defendants became gradually emboldened. Amid the ongoing social unrest in Las Vegas, the government submits that these defendants, if placed on pretrial release, would return to rioting, destroying property, and endangering others.

The government submits that the defendants failed to meet their burden of production to rebut the presumption that their release does not pose a danger to any person or the ommunity. The only evidence produced by the defendants to support their release was self-proclaimed, unverified family support and family ties to the community. None of these arguments addresses concerns regarding the nature and seriousness of the danger to the victims, any person, or the community. Therefore, the defendants have not met their burden of production to rebut the presumption to show by clear and convincing evidence that there is not a danger to the community.

V. **CONCLUSION**

The defendants have failed to meet their burden, as the facts demonstrate by clear and convincing evidence that no condition or combination of conditions can be fashioned to combat the nature and seriousness of the danger that defendants' release would pose to any

person or the community. While the defendants spend considerable time arguing about ties to the community or a place to reside in their effort to rebut the presumption related to risk of flight, almost none of these claims were verified by Pre-Trial. Additionally the defendants offered no evidence or argument to show that they are not a danger to the community. Absent this evidence, defendants have not met their burden of production. At the detention hearing, all three proffered solely that they are long-time residents of Las Vegas and have family support. When considering all four factors under the Bail Reform Act, and the how heavily the first, second, and fourth factors weigh in favor of detention, Defendants' conclusory arguments are insufficient to overcome the overwhelming evidence showing that the defendants are a danger to the community such that no release condition or combination of conditions can adequately safeguard against the risk posed by release.

The United States therefore, respectfully asks this Court to overrule the Magistrate's order releasing the defendants pending trial and order them detained.

DATED this 7th day of June, 2020.

Respectfully submitted,

NICHOLAS A. TRUTANICH
United States Attorney

*/s/ Stephanie N. Ihler*
STEPHANIE N. IHLER
Assistant United States Attorney