LAW OFFICES OF IVETTE AMELBURU MANINGO
IVETTE AMELBURU MANINGO, ESQ.
NEVADA BAR NO.: 7076
400 S. Fourth Street, Ste. 500
Las Vegas, NV 89101
Tele.: (702) 793-4046
Fax: (844) 793-4046
Email-iamaningo@iamlawnv.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICARDO DENSMORE,<br><br>Defendant. | CASE NO.: 2:20-cr-00126-APG-VCF<br><br>**MOTION TO REOPEN DETENTION HEARING (ECF DKT. #15; ECF DKT. #34) UNDER 18 U.S.C. § 3142(f)**<br><br>**Expedited Hearing Requested** |

COMES NOW, Defendant, RICARDO DENSMORE, by and through his attorney IVETTE AMELBURU MANINGO, ESQ. of THE LAW OFFICES OF IVETTE AMELBURU MANINGO, and moves to this Honorable Court to reopen his detention hearing (ECF Dkt. #15; ECF Dkt. #34) and grant his release under 18 U.S.C. § 3142(f). There are changed circumstances that now exist that warrant the Court's hearing on this Motion. There are conditions of release that will reasonably assure Mr. Densmore's appearance and the safety of the community. 18 U.S.C. §3142(c)(1)(A) & (B)(i)-(B)(xiv).

## I.    RELIEF SOUGHT

18 U.S.C. §3142(f) provides that the "[detention] hearing may be reopened…at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that was a material bearing on the issue of

where there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person, and the community. A detention hearing may be reopened for the purpose of the Court receiving any information, within reason, not submitted at the original detention hearing. *United States v. Barksdale,* 2008 WL 2620380 (E.D. Cal July 1, 2008).

Mr. Densmore seeks the following relief: to reopen his detention hearing based on changed circumstances including: (1) a permanent stable residence has been fully explored and confirmed with Mr. Densmore's father and longtime partner, Rena McIntyre; (2) Ms. Rena McIntyre is a viable, suitable custodian for Mr. Densmore; and (3) conditions of release can now be fashioned to reduce the likelihood of flight or danger to the community.

## II.    PROCEDURAL BACKGROUND AND RELEVANT FACTS

On June 4, 2010, the government filed a Complaint charging Tyree Walker, Devarian Haynes and Ricardo Densmore with Conspiracy to Commit Arson (18 U.S.C. § 844(n)) and Arson (18 U.S.C. § 844(i)) ECF Dkt. #1.  These charges arose out of an incident involving the fire damage of an unoccupied police vehicle that occurred at a protest in Downtown Las Vegas.  The local protests were among thousands of protests occurring in the United States and throughout the world after the killing of George Floyd by law enforcement officers captured on tape in Minnesota.  Densmore, a young African American male, watched along with millions as Floyd was brutally suffocated by police for no apparent reason.  Walker, Haynes and Densmore attended the local downtown protests on May 31, 2020.  While at the protests, the government has alleged that Walker and Haynes set an unoccupied Las Vegas Metropolitan Police Department car on fire while

Densmore recorded the event.  The Complaint further asserts that Walker, Haynes and Densmore all confessed to their involvement in the incident.

On June 2, 2020, Walker and Haynes were arrested for their roles in the incident. While Densmore is not accused of lighting the fire, he is accused of and admitted to recording the incident.  As such, Densmore was also arrested and the initial appearance for all three (3) defendants was scheduled for June 5, 2020.  Undersigned counsel was appointed to represent Densmore on June 4, 2015. On the morning of June 5, 2020, the undersigned scheduled a video meeting with Densmore to do the pretrial interview. There were multiple issues that day that caused significant delays in client/defendant interviews. In an apparent attempt to provided something to the court, Pretrial completed a Report within thirty (30) minutes after the conclusion of the interview with Densmore (this report will be referred to hereinafter as the "First Report"). The First Report was significantly incomplete and recommended detention. Specifically, the First Report stated that most of the information needed could not be obtained from Densmore which was inaccurate. Densmore actually provided answers to all of the questions but apparently due to time constraints, Pretrial did not provide that information in the First Report and did not verify the information provided.  As such, the Pretrial officer made a recommendation of detention stating that Densmore posed a risk of non-appearance because of lack of information about background, lack of verified information about background, and unknown mental/substance abuse.

At the hearing, the government sought detention for all three (3) defendants and did not argue the matter as a presumptive case under 18 U.S.C. §3142(e)(3)(C).  Haynes initially proceeded and argued but thereafter postponed his detention hearing.  Walker

proceeded and was released with conditions.  Densmore proceeded with his detention hearing and during breaks, Pretrial was able to verify information requested by the Magistrate.  After receiving information from the undersigned and from Pretrial not contained in the First Report, Magistrate Judge Weksler ultimately found that conditions could be fashioned to reasonably assure Densmore's appearance and the safety of the community and ordered Densmore released under strict conditions.

Magistrate Judge Weksler's release order was made after a lengthy and thorough hearing, in which all the arguments of prosecutors and all three (3) defendants were considered, and after making detailed findings supporting the order.  Specifically, as reflected in the undersigned's notes from the hearing, Magistrate Judge Weksler found that the government did not meet their burden regarding flight risk and danger to the community.  As to flight risk, the Magistrate noted that this was a serious and concerning crime which carried a serious five-year penalty.  Additionally, noting that it being the least important factor, the Magistrate did find that the weight of the evidence (the existence of video of incident, Densmore's confession to watching and recording the incident, etc.) was in the government's favor.  Further, while Densmore did have some failures to appear (FTAs), the FTA in 2014 had no disposition, and the FTAs appeared to be for traffic violations.  Denmore's record did not reflect repeated FTAs in the last two (2) years.

In addition to the finding that the government did not meet their burden regarding flight risk, Judge Weksler also found that the government did not meet their burden regarding danger to the community.  Again, the Magistrate noted that the nature and circumstances of the offense were concerning but that the context of the incident had to be considered.  Based on Densmore's history and the protests ensuing, this appeared to be an

4

isolated case under isolated and extreme circumstances.   The Magistrate found that Densmore's misdemeanor domestic violence charge that had serious allegations was a concern but that he had been successfully supervised, completing all the requirements of probation, including classes, fines and community service.   As such, the Magistrate found that overall, the government's burden was not met.

After making these detailed findings and incorporating similar and additional findings made during the hearings of the codefendants, Magistrate Judge Weksler ordered Densmore to be released under strict conditions, including amongst other conditions, house arrest at a friend's residence and GPS monitoring, in which the device would be installed and activated first thing that Monday morning at his meeting with pretrial.   In addition to fashioning these strict conditions, the Magistrate gave stern warnings to Densmore regarding his lock-down status.   Nevertheless, the government orally moved for a stay of the release order.   The Judge had previously discussed the request for the stay with the government during the Walker detention hearing and as with Walker, denied the government's motion for a stay.

Later that Friday evening the Government filed an "Emergency Motion for Stay of Magistrate Judge's Release Orders Pursuant to 18 U.S.C. §3145(a)." ECF Dkt. #5. This Honorable Court granted the government's motion late that night at which time the van that was transporting the defendants from Pahrump to Las Vegas for release turned around and the defendants were placed back in detention center in Pahrump.   Counsel for Defendants Walker and Densmore briefed the matter over the weekend and both filed pleadings.   Densmore filed his response to the governments pleading and a Motion for Immediate Release. ECF Dkt. #11.   While Densmore's motion was not ruled upon at the

time, on June 7, 2020, this Court denied Walker's Motion for Immediate Release and set a hearing for both Densmore and Walker on June 8, 2020.  ECF Dkt. #10.

On June 8, 2020, before the hearing, pretrial prepared another Report (hereinafter, "Second Report") for Densmore that was much more detailed. Pretrial was able to verify the residence in which he would be staying, talk to Densmore's father and verified work history.  The Second Report recommended that Densmore be released, without the condition of house arrest.

At the conclusion of the hearing, this Court ordered the release of Walker to a residence in Las Vegas and required a third-party custodian amongst other strict conditions.  However, the Court did not order Densmore's release, but instead ordered he remain detained pending a written decision.  On June 9, 2020, this Court entered an order vacating the Magistrate's release order and ordered that Densmore remain in detention. ECF Dkt. # 34.  The Court outlined its reasons, highlighting that the primary concern which resulted in Densmore's detention was that he did not have a stable living situation or third-party custodian.  At the hearing, the proposed living arrangement had fallen through. Densmore's friend said she would or could not be a third-party custodian and had only known Mr. Densmore for a couple of weeks. She did agree to have him stay with her, however, the Court found the proposed living arrangements unstable. ECF Dkt. #34, Pg. 3.  The Court also found that Densmore's second choice for residence pending trial, his biological father's residence in Michigan, was not fully explored but could serve as a basis to reopen detention if in fact the option was explored in more depth. ECF Dkt. #34, Pg. 7.

Also, on June 8, 2020, Haynes had a detention hearing in front of Magistrate Judge Weksler. Haynes was granted pretrial release. The government requested a stay which

was denied, and Haynes was released pending the government's appeal of the detention order.

Thereafter, while the Haynes appeal was still pending, the government took its case to the grand jury on June 16, 2020 and an Indictment was filed against Haynes, Walker and Densmore the same day.  Said Indictment charges the defendants with two (2) counts of Conspiracy to Commit Arson (18 U.S.C. § 844(n)) and two (2) counts of Arson (18 U.S.C. § 844(i); 18 U.S.C. § 844(f)(1))  ECF Dkt. #47.  Although the defendants' Indictment resulted in a new case number and assignment to new Judges, this Court heard the Haynes appeal.  As such, the appeal filed in the Haynes matter was heard and denied by this Court on June 17, 2020 and Haynes remains out of custody.  During said hearing, this Court made several comments and drew a couple of distinctions between Defendants Haynes and Densmore.  One of the issues, with respect to prior criminal history, was that while it was clear that Haynes' wife, who he was to live with, was aware of Hayne's domestic violence case because she was the named victim, it was unclear if Durant, Densmore's friend that he was to reside with, was aware that Densmore had a previous DV misdemeanor conviction. ECF Dkt. #57, Pg. 25, ¶¶ 23-25 and Pg. 26, ¶¶ 1-9. More significantly however, was the Court's assertion was that the "key difference" between the detention decisions in Haynes' case versus Denmore's case that "tipped the balance" in favor of releasing Haynes was that that Haynes had "substantial support, both financial and in terms of a place to live."  Dkt. #57 Pg. 23, ¶¶ 25 and Pg. 24, ¶¶ 1-23.  Unlike Densmore, Haynes was going to live with his wife and she and other family members willing to serve as third-party custodians.  Densmore was simply going to live with a friend he knew for a short time and his family ties were not fully explored.  *Id.*  So, in the Court's

view, Haynes situation was different than Densmore's and closer to Walker's, who was also released. In sum, family ties and support for Haynes and Walker made it more likely that they would appear in court and not be a danger to the community. Dkt. #57, Pg. 24, ¶¶ 17-23.

This Court's analysis during the Haynes' hearing supports a reopening of Densmore's detention hearing and his release considering Densmore's family ties and support have now been fully investigated and developed and Densmore now has a solid plan for release which demonstrates the family support, both regarding a stable place to live with a third party custodian and other financial support.

As with the Haynes matter, this Court is most familiar with the facts and circumstances of the instant case and in particular, the detention orders and matters related thereto. This Court has had several hearings in this case involving all three (3) defendants and has made findings and entered various orders related to detention, including the 6/5/20 Order ECF Dkt. #7 granting the stay of Densmore's release ordered by Judge Magistrate Weksler and the 6/9/20 Order ECF Dkt. #34 further detaining Densmore after review of the Magistrate's release order. The instant Motion is made to reopen the detention hearing from 6/8/20 that was heard before this Court ECF Dkt. #15 resulting in the detention Order ECF Dkt. #34. As such, this Motion and any subsequent hearing on said Motion is properly before this Court.

//

//

//

//

### III.   ARGUMENT

### FUNDAMENAL PRINCIPLES OF LAW AND LIBERTY STRONGLY DISFAVOR PRETRIAL DETENTION

Pretrial detention is anathema to our justice system. See *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). Indeed, "federal law has traditionally provided that a person arrested for a non-capital offense shall be admitted bail." *Id.* To this end, the Bail Reform Act (mandates release of a person facing trial under the least restrictive or combination of conditions that will reasonably assure the appearance of the person as required." *Id.* And pretrial release can be denied only if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. *United States v. Hir*, 517 F.3rd 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C §3142(e)).

Moreover, all" [d]oubts regarding the property of release should be resolved in favor of the defendant," '[o]nly in rare circumstances should be release be denied,' and the government always bears the burden of proof. *Motamedi,* 767 F.2d at 1405-1406. Ultimately, because "[a] critical liberty interest is at stake," the court "should always exercise [its] discretion with the recognition that pretrial detention may restrict for a significant time the liberty of a presumably innocent person." *United States v. Delker,* 757 F.2d 1390, 1398-99 (3rd Cir. 1985). Given the presumption of innocence, a defendant's "right to bail should be denied only for the strongest of reasons." *Motamedi* at 1407.

//

//

//

9

**THE GOVERNMENT CANNOT NOW MEET ITS BURDEN TO PROVE BY THAT NO COMBINATION OF CONDITIONS WILL REASONABLY ASSURE DENSMORE'S APPEARANCE AND THE SAFETY OF THE COMMUNITY UPON MR. DENSMORE'S RELEASE**

Section 3142(g) provides the framework for determining whether there are conditions of release that will reasonably assure the appearance of the person and safety of any other person or the community. The statute calls for a global approach, which accounts for all available information concerning: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §3142(g).

Mr. Densmore is charged with arson, 18 U.S.C. § 844(i), which is one of the offenses that carries a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond, and therefore gives rise to a presumption of detention. 18 U.S.C. §3142(e)(3)(C); see also § 2332b(g)(5)(B). See Dkt. 34, Pg. 3, 3-8. The presumption merely "imposes a burden of production on the defendant to put forth some credible evidence in order to rebut it." *United States v. Castaneda,* 2018 U.S. Dist. LEXIS 25266 at *11 (N.D. Cal. 2018). And, as the Ninth Circuit held in the *United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008), "Although, the presumption shifts a burden of production to the defendant, the *burden of persuasion remains with the government.* A finding that a defendant is a danger to any other person, or the

community must be supported by clear and convincing evidence." (Citations omitted, emphasis added).

The previous Order ECF Dkt. #34 detaining Densmore noted the lack of residence stability as the primary reason for detention.  The focus of this Motion is related to this issue and a change of circumstances thereto as a basis to reopen detention and release Densmore.  However, because the Court is required to consider all four (4) factors in evaluating whether to detain or release Defendant to pretrial on his motion for reopening detention, Densmore will refer to prior orders and will address each factor separately for the Court to evaluate if he should now be released based on the new circumstances.

1.    **Nature and Circumstances of Offense Charged**

When this Honorable Court considered the nature and circumstances of the instant offense to determine Mr. Densmore's detention, the Court ruled that the nature and circumstances of the charged offense weigh against him. ECF Dkt. # 34, Pg.4.  While the Court acknowledge that this incident must be viewed in context and empathized with the righteous indignation over the killing of George Floyd, the Court made its ruling based on the violent nature of the offense and the fact that arson is a serious crime because of the penalties Congress contemplated for those convicted of committing it. Citing *United States v. Townsend. Townsend,* 897 F.2d 989, 995 (9th Cir. 1990). ECF Dkt. # 34, Pg.4, ¶¶ 6-26.

Densmore is not disputing the violent nature of the arson that he is charged with. However, Densmore's actions should continue to be viewed in context, as he was clearly caught up in the intense emotions generated by the brutal killing and his participation in a legitimate protest.  Additionally, it is important to point out that no one was injured in any way.  Moreover, in this case both codefendants, Walker and Haynes, who arguably

played more significant roles in this incident, have been released despite the Court's finding regarding the violent nature and circumstances of the charged offense. This was partly due the stable housing situation and the use of third-party custodians these young men were fortunate to have. Despite the Court's findings regarding this factor weighing against the defendants, Densmore is asking for reconsideration because he too now has options for stable housing if he is released and the nature and circumstances of the offense should be given the same weight as was given relative to his codefendants.

2.  **Weight of Evidence Against Defendant**

As the Court noted in its detention order, this "factor 'is the least important of the various factors." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). ECF Dkt. # 34, Pg. 5, ¶¶ 8-9. This factor may only be considered in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community. See 18 U.S.C. § 3142(g). ECF Dkt. # 34, Pg. 5, ¶¶ 8-9.

Densmore is not disputing that the weight of the evidence against him does not tip in his favor. As mentioned at the two hearings regarding detention on June 5, 2020 and June 8, 2020, it appears the government has confessions from each of the defendants and a video recording of the alleged arson. However, the Court ruled that the "presumption of innocence is of paramount importance in our criminal justice factor and therefore does not assign this factor much weight in the overall analysis." ECF Dkt. # 34, Pg. 5, ¶¶ 20-22. Therefore, this factor should again have little importance in considering Densmore's release pending trial.

//

//

12

### 3.   History and Characteristics of Mr. Densmore

Courts may consider the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug and alcohol abuse, criminal history, [and] recording concerning appearance at court proceedings. *Motamedi*, 767 F.2d at 1407 reciting 18 U.S.C. §3142(g). The Court has previously ruled that this factor also weighs against Densmore's release.  ECF Dkt. # 34, Pg. 6, ¶ 7.

The primary concern of the Court was the fact that Densmore did not have a fixed and stable place to live in Las Vegas at the time of the hearing. ECF Dkt. # 34, Pg. 6, ¶¶ 7-17. This circumstance has changed which warrants the reopening of the detention hearing and Densmore's release. Densmore will now address the various factors under 18 U.S.C. 3142(g) with an emphasis on issues relative to his residence and stability if released.

### A) *Proposed Housing*

Since the detention hearings on June 5, 2020 and June 8, 2020, undersigned counsel has been able to confirm a stable residence and has located and interviewed a third-party custodian for Densmore.  Said residence and custodian are in Michigan with his biological family and in Densmore's view, the most stable and best option.  However, Densmore is also proposing an alternative options for the Court to consider as well.

#### i.   Richard Palmer and Rena McIntyre in Ypsilanti, Michigan

Densmore's father, Richard Palmer, and his long-time partner, Rena McIntyre reside at 1419 McCarthy Street, Ypsilanti, Michigan 48198.  Mr. Palmer is disabled and

currently unemployed.  He has been in a long-term relationship with Rena McIntyre for five (5) years but has known her for over fifteen (15) years.  The couple have resided together at the McCarthy residence for three (3) years and McIntyre's 19-year old son, who is employed, also lives with them.  McIntyre currently works as a program manager at EHM Senior Solutions and has been employed there for over ten (10) years. Palmer and McIntyre have agreed to have Densmore reside with them indefinitely and throughout the obligations of this case.

Mr. Palmer does have a criminal history, therefore, Ms. McIntyre has agreed to be a third-party custodian for Densmore. The family is stable and are completely supportive of Densmore. They will provide a healthy, structured environment for Densmore while on pretrial.  Densmore is familiar with the town in Michigan and the house as he resided with the couple for approximately two (2) months after being laid off of his job due to the pandemic.  The experience was positive for both the couple, the rest of the family and for Densmore.  They established bonds and have been in constant communication since he left Michigan.  McIntyre affectionately considers Densmore her "bonus son," as she is the mother of three (3) other boys.

Palmer and McIntyre are aware of the circumstances of this case and understand the need for Densmore's structure and support at this juncture.  They are not only willing and able to provide a home and the emotional support Densmore needs but understand and are willing to provide Densmore the financial support necessary until he is able to get back to work and support himself again.  Finally, McIntyre is willing to take on the responsibility and obligations of a third-party custodian in every respect and will ensure

that Densmore is following all this Court's orders, Pretrial's conditions, and that he is present at all court hearings and important meetings with his counsel.

ii.   Halfway House

At the previous June 5th detention hearing in front of Magistrate Judge Weksler, Densmore's counsel suggested Densmore be released to a half-way house as an alternate option to the residence being considered.  While this option was not fully explored during the review hearing on June 8th, it should be considered as an alternate release plan here. If the Court is not inclined to grant Densmore's release to Michigan, he requests that he be permitted to reside in a halfway house while awaiting trial.  Although the halfway house is currently not taking patients due to COVID-19, it is the undersigned understanding that the halfway house expects to be able accept referrals again sometime in July.  As an alternative to residing in Michigan with his family, Densmore could be released to the halfway house immediately upon a bed opening at the facility.

*B) Characteristics*

Densmore is a young, 24-year-old African American man. Densmore has not had an easy life. At the age of six (6), Densmore was removed from his home in Ann Arbor, Michigan and taken to Las Vegas to be placed in a foster home. Unfortunately, this did not make his life much easier. That foster home eventually became his adopted home and Densmore was not afforded the nourishment, guidance, structure, love and care all children need.  In fact, the contrary was true.  He was neglected, often going without things that he needed, and was physically abused.  As Densmore got older, he realized that he was not wanted and was only being used as a pawn for his adoptive mother to obtain excess money from the State.

15

At the age of 16, Densmore could not handle this mistreatment and decided to run away. He lived between friends and girlfriends' homes and eventually, when all other options were exhausted, Densmore returned to his abusive adoptive home until he graduated. However, the neglect, abuse and instability in his childhood did not stop Densmore from obtaining his high school diploma, gaining employment and eventually saving enough money to rent an apartment with his friend.

In March 2020, during the COVID-19 crisis, Densmore found himself in an unstable situation again when he was laid off from his job with Special Operations Associates, Inc. (SOA). Densmore reconnected with his birth family and moved to Detroit, Michigan to spend time with his family who were supportive of him and his situation. In those two (2) months, Densmore built a strong, genuine, supportive relationship with his father, Rena McIntyre, and the rest of his biological family. He has been in constant contact with them since his return to Las Vegas and they continue to be supportive until this very day.

### C) Physical and Mental Condition

Densmore is of sound mental condition and in overall good physical health. He did suffer a fracture in his hand shortly before his arrest and was scheduled to get a cast on his hand once the swelling went down. Since Densmore's incarceration, he has been held in solitary confinement and has not been able to have anyone from the medical unit examine him. There is concern that his hand will not heal correctly if the fracture is not attended to properly. If granted release, Densmore will be able to get the medical attention that is necessary.

//

//

### D) Family Ties

As mentioned above, Densmore has not had an easy life filled with a large, supportive family.  However, before the COVID-19 crisis, Densmore was able to locate his mother on social media and went to Michigan to meet her and was also able to connect with his father.  Although the meeting with his mother was not what he had hoped, the meeting with his father, Richardo Palmer, was significant and impactful. Densmore was taken in by his father and his father's long-time partner, Rena McIntyre and her children. Densmore immediately bonded with his dad and McIntyre.  He was able to meet and also spend time with aunts, uncles and cousins. Mr. Densmore stayed with his father and McIntyre for two (2) months at their McCarthy house and became incredibly close to his new family.

At the time of the detention hearing, Palmer offered financial support and a residence for an apartment for Densmore, however, without understanding the process and the need for a thorough investigation, he previously declined to participate in a background check.  Palmer simply did not understand his obligation in this respect but now understands the process and has since provided Pretrial with all the necessary information so they could run a background check to finish their investigation.

The Palmer/ McIntyre family has been nothing but supportive since Densmore's arrest. They have placed funds on their phone so they can talk and support Densmore and have stayed in constant contact with undersigned counsel to see about his well-being and the status of his case.  They are incredibly hopeful that Densmore will be released and can reside with them in Michigan and are willing to do whatever possible to facilitate his release and support thereafter.  Densmore has always craved familial support and he has

finally found it. The family will give him the structure and support he needs, and custodian Rena McIntyre will serve as an excellent role model while ensuring that he follows through with his obligations in the underlying action.

### E) Employment

At Densmore's age, it is merely impossible to have a lengthy work history. Nonetheless, Densmore was employed at SOA Security over the course of two (2) to three (3) years and same was verified by Pretrial. After his layoff during COVID-19, Densmore was under the impression he was going back to work. In fact, he returned from Michigan fully expecting to have his job back. He was even given some detail that he would be reporting to the El Cortez for security work shortly after the time of his arrest in mid to late June. He only learned he no longer had a job when his supervisor informed Pretrial that they were not going to hire him back due to employment related issues. ECF Dkt. # 34, Pg. 6, ¶¶ 14-15. Although, Densmore does not have a specific job lined up yet in Michigan, the proposed custodian, Rena McIntyre, is willing to help him with the application and hiring process at her company. McIntyre has been with her company, EHM, Senior Solutions for eleven (11) years and is a program manager. McIntyre is able to hire Densmore at her company if applies and clears a background check. The company is currently hiring for several positions, including elder hands-on care, and in the dietary housekeeping, and groundskeeping departments. Even if he is not hired at EHM, Densmore is a young, healthy person with work experience and intends to find employment as soon as possible, wherever possible. His family intends to help him in this regard and as discussed herein, he does have financial support from his family in the interim.

### F) Financial Resources

Densmore does not have significant financial resources, savings or assets. However, as mentioned above, Densmore can and will be financially supported by his family and will also gain employment to help support himself and meet the obligations in this case.

### G) Length of Residence in the Community/ Community Ties

Densmore has resided in Las Vegas since he was six (6) years old and has community ties through many friends and through his employment here locally.  As noted by this Court, there is no question that Densmore considers Las Vegas his home.  ECF Dkt. # 34, Pg. 6, ¶¶ 13-17. However, his family ties are outside of Las Vegas, as due to neglect and abuse, he no longer has communications with his foster/adoptive family here in Las Vegas.  These circumstances are of no fault of his own and the fact that he does not have a family home here in Las Vegas should not be used against him.  Luckily, while a *local* family-oriented stable residence is not available, he does have one in Michigan where he can be easily supervised.  He has in Michigan what he lacks in Las Vegas that the Court was concerned about, a stable residence and family members that will ensure his appearance at pre-trial hearings and trial.   Additionally, it is clear that Densmore does not have the desire or means to go anywhere other than Michigan to his family's home.  It was already established during verification by Pretrial and at the detention hearing that Densmore has not traveled much outside of Nevada, with the exception of visiting family in Michigan, and does not have a passport. ECF Dkt. # 34, Pg. 7, ¶¶ 13-16. He will have no problem staying and residing in Michigan with his family and/ or remaining in Las Vegas at a halfway house.

//

19

## H) Past Conduct, Criminal History and Risk of Nonappearance

The Court expressed concern as to Densmore's past conduct including his criminal history and emphasized that Densmore has charges of contempt of court and two (2) failure to appears. ECF Dkt. # 34, Pg. 6, ¶¶ 17-21.  Regarding the failures to appear, Densmore is requesting that the Court consider his age at the time and the nature of those incidences. The contempt of court and failures to appear on the driving an unregistered vehicle charges were originally citations. The failures to appear and contempt were for non-payment of fines.  While these failures on his part to come to court show a sense of irresponsibility, they should be considered in context and do not demonstrate that there are no conditions that can be fashioned to assure it does not happen in this case. These charges were also over two (2) years old. Densmore can be on house arrest, if the Court finds it necessary, to ensure that there is no risk of nonappearance.

Additionally, the Court also expressed concern as to Densmore's misdemeanor charge for Battery DV in February 2019.  While Densmore realizes this is not the forum to relitigate or justify his behavior, as he did plead no contest to the charge, it is significant to note that he complied and completed all the responsibilities of that case, satisfying all the requirements ordered by that court during the probation period.  Most significant in this context is that Densmore appeared at all his court hearings, obeyed all court orders and case requirement (classes/fines/community service) and was successfully supervised throughout.

### I.   Drug and Alcohol Abuse

Densmore has admitted to using marijuana during his pretrial interview but denies, and has no history of, drug or alcohol addiction.  He knows if he is released, he

cannot use marijuana and will not do so.  Of course, Densmore can be and expects to be tested while released to ensure drugs are not being used.

### 4.  <u>Nature and Seriousness of Danger to any Person or the Community that would be Posed by Defendant's Release</u>

The Court heavily examined and found the nature and seriousness of danger to any person or the community neutral and determined that since the other three factors weighed in favor of detention it did not affect the overall analysis. ECF Dkt. # 34, Pg. 7-8, ¶¶ 5-12.  This factor did not prevent codefendants, Walker and Haynes, who arguably had larger roles in the incident, from being released. As Densmore has already argued, while he did record and post the incident, he did not participate in actually damaging the unoccupied police vehicle.  Moreover, he confessed to the wrongdoing, has showed remorse, has learned his lesson, and can be prohibited from attending protests as a part of his pre-trial supervision. This is an isolated incident that occurred under unique and particularly emotionally charged circumstances.  Densmore respectfully asks the Court to reconsider his detention because he is not a risk or danger to the community and certain conditions can be fashioned to assure same.

### IV. CONCLUSION

Defendant Ricardo Densmore is the only defendant being detained in this case.  His codefendant's, who are accused of causing damage to an unoccupied police care while Densmore recorded the incident, and whom are not free of issues and factors that weighed against their detention, have been released.   While Magistrate Judge Weksler's issued ordered Densmore released and thereafter Pretrial services also recommended Mr. Densmore's release, this Court disagreed and ordered Densmore detained pending trial. ECF Dkt. # 34.  In doing so, this Court's primary concern which ultimately resulted in

Densmore's continued detention was that he did not have a stable living situation or third-party custodian.  In fact, the Court noted that an in-depth exploration of Defendant's option to live with his family in Michigan could be a basis to reopen detention.  ECF Dkt. # 34, Pg. 7, FN 8, ¶¶ 26-28.

Mr. Densmore, through undersigned counsel has thoroughly explored and investigated Densmore's release to his family in Michigan and has determined that Densmore has a permanent stable residence with his father and longtime partner Rena McIntyre in Michigan and that Ms. McIntyre is a viable, suitable custodian for Mr. Densmore.  Moreover, the possibility of Densmore's release to a halfway house here in Las Vegas has also been investigated and if necessary, is available as an alternative residence when a bed becomes available.

Therefore, there has been a change of circumstance that justifies the reopening of the detention hearing before this Court and conditions of release can now be fashioned to reduce the likelihood of flight or danger to the community.  As such, it is requested that the issue of detention be reconsidered and that Mr. Richardo Densmore, like his codefendants, who are apparently doing well on pretrial release, be released from custody with appropriate conditions pending trial.

Dated this 26th day of June 2020.

        /s/ Ivette Amelburu Maningo
IVETTE AMELBURU MANINGO, ESQ.
NEVADA BAR NO.: 7076
400 S. Fourth Street, Ste. 500
Las Vegas, NV 89101
Tele.: (702) 793-4046
Fax: (844) 793-4046
Email:iamaningo@iamlawnv.com