NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
STEPHANIE N. IHLER
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Email:  stephanie.ihler@usdoj.gov
Counsel for United States

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICARDO DENSMORE,<br><br>Defendant. | Case No.:  2:20-cr-00126-APG-VCF<br><br>**Government's Response to Defendant Densmore's Motion to Reopen Detention Hearing (ECF No. 64)** |

Certification: This motion is timely filed.

This Court should deny Defendant Densmore's Motion to Reopen Detention Hearing because it fails to present new, material, information that was unknown to Densmore, at the time of his initial detention hearing. Moreover, even if this information was presented during the initial detention hearing, it would not have affected the court's finding that the Government proved that no conditions could be fashioned to reasonably assure the Densmore's return to court or safety of the community.

### I.   FACTUAL BACKGROUND

The offense charged in the indictment occurred just after midnight on May 31, 2020.  Las Vegas Metropolitan police officers had parked police patrol units in the area of

East Carson and South 9th Street, which is a mixed residential and business area. Police were in the area due to the protests relating to the death of George Floyd. Seeing the parked unattended patrol units, the defendants poured a flammable liquid, believed to be gasoline, from a red gas can into the broken or missing window of one of the patrol units, used a butane lighter and a white unidentified object to ignite the liquid, then threw the gas can with additional flammable liquid into the police car, causing a conflagration that required the Fire Department to suppress and extinguish it, causing a risk of explosion and irreparable damage to the vehicle. The defendants videoed themselves in the act of setting the fire and posted it to social media.

The video shows that defendant Walker poured liquid from the red gas can onto a white object. The defendants can be heard discussing pouring the liquid directly on the patrol vehicles. Walker approached the patrol vehicle, where he was joined by Haynes who was carrying the gas can. The video shows that Walker ignited the white object using a butane lighter through a broken or missing front passenger side window.

Walker stood next to Haynes while Haynes then poured liquid from the gas can through the broken window into the vehicle. Walker dropped the white object, which was on fire, into the patrol vehicle. Haynes dropped the gas can inside the patrol vehicle. As the fire ignited, the sound of an approaching police siren can be heard. The defendants fled on foot as the video immediately ends. Defendant Densmore was the individual videoing these acts. Densmore then chose to subsequently post these recorded acts to his social media account.

Upon arrest and post-*Miranda*, on June 3, 2020, each defendant was interviewed and admitted setting the police vehicle on fire.

## II. RELEVANT PROCEDURAL HISTORY

On June 4, 2020, the government filed a complaint against defendants Tyree Walker ("Walker"), Devarian Haynes ("Haynes"), and Ricardo Densmore ("Densmore), charging all defendants with one count of Conspiracy to Commit Arson, in violation of 18 U.S. C. § 844(n) and Arson, in violation of 18 U.S.C. §§ 844(i) and 2. *See* ECF No. 1. All defendants made their initial appearances on the complaint on June 5, 2020.

At the detention hearing, the government requested the defendants' detention as a risk of flight and a danger to the community.[1] Defendants Densmore and Walker requested release with conditions, each arguing significant community ties and that conditions could be fashioned to mitigate danger to the community or risk of flight.

With regard to defendants Walker and Densmore, Magistrate Judge Weksler found that the government had not met its burden to establish that Walker or Densmore posed a risk of flight or danger to the community. The Magistrate then held that conditions could be fashioned to ensure the safety of the community, found that the defendants Walker and Densmore are not a flight risk, and ordered their release with conditions. The government announced its intent to seek review of the release orders under 18 United States Code Section 3145(a), and requested the court stay its release order so that the government could seek review by the District Court. The Magistrate denied the government's request, saying that there was no authority for the request.

The government immediately filed an Emergency Motion to Stay the court's decision.

---

[1] The Government based its argument under 18 U.S.C. § 3142(e)(3)(E). However during the hearing, the fact that the Arson charge gives rise to a rebuttable presumption for detention was not addressed by the parties or the Magistrate Judge. *See* 18 U.S.C. §§ 3142(e)(3)(C), 2332b(g)(5)(B).

3

(ECF No. 6). This Court granted the government's motion for a stay and ordered Defendants Walker and Densmore to be detained pending this Court's review. (ECF No. 7).

On June 6, 2020, Attorneys for Defendants Walker and Densmore filed an Emergency Motion for Immediate Release. (ECF No. 9 and 11.)

On June 8, 2020, Judge Du heard oral argument. On June 9, 2020, this Court entered an order vacating the Magistrate's release order and ordered Densmore detained pending trial. ECF No. 34.

Densmore was indicted by a Federal Grand Jury on June 16, 2020, and charged with two (2) counts of Conspiracy to Commit Arson (18 U.S.C. § 844(n)) and two (2) counts of Arson (18 U.S.C. § 844(i); 18 U.S.C. § 844(f)(1)) ECF No 47.

On June 26, 2020, Densmore filed a Motion to Reopen Detention Hearing. ECF No. 64.

Magistrate Judge Weksler issued a minute order ordering the Government to respond to Defendant Densmore's Motion to Reopen by June 30, 2020 at 5pm. ECF No. 65. This response timely follows.

### I.   Legal Standard

A detention hearing may only be reopened if (1) "the judicial officer finds that information exists that was not known to the movant at the time of the hearing" and (2) that new information "has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Courts interpret this rule strictly. *E.g., United States v. Ward,* 63 F.Supp. 2d 1203, 1206-07 (C.D. Cal.. 1999); *United States v. Dillon,* 938 F.2nd 1412, 1415 (1st Cir. 1991). The rationale for the rule is

discussed in *United States v. Flores*, 856 F.Supp. 1400 (E.D. Cal. 1994). "A rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice." *Flores,* at 1406. Typically, good cause must be shown for why evidence was not presented at the initial hearing. *Id.*

The Defendant, and not his attorney, is the movant referenced in Title 18, United States Code, Section 3142(f). *United States v. Ward*, 235 F.Supp.2d 1183, 1185 (N.D.Okl. 2002). "The test for whether proffered information is new information previously unknown to the defendant is whether the information was unknown at the time of the hearing, not whether a witness's willingness to testify was unknown to the movant." *United States v. Martin*, 2015 WL 3454937, at *2 (N.D. Cal. May 29, 2015). "If evidence was available at the original hearing, no rehearing is granted." *United States v. Turino*, 2014 WL 5261292, (D. Nev. October 15, 2014).

Finally, courts examine four factors to determine whether to detain or release a defendant: a) the nature and circumstances of the crime, including whether it is a crime of violence; b) the weight of evidence against the person; c) the history and characteristics of the person, including community ties, past conduct, criminal history, record concerning appearance at court proceedings; and d) whether release would endanger the community. 18 U.S.C. § 3142(g).

### III.   ARGUMENT

Densmore fails to advance information that is new and material in order to re-open the hearing so the Court can take evidence to "reconsider" its decision. The only proposed new information presented by Densmore in his motion to re-open detention hearing is his

proffer to this Court regarding a potential living situation with father, Richardo Palmer and his long-time partner, Rena McIntyre in Ypsilanti, Michigan. ECF No. 64. Densmore proposes that McIntyre will act as his third-party custodian because Palmer has a criminal history. *Id.* Not only was this information known or readily available to Densmore at the time of the initial detention hearing, but said information is also not material to the issue of detention.

However, if this Court finds that Densmore has sufficiently provided new information, the Government continues to seek pre-trial detention of Densmore as he poses a danger to community and significant flight risk, and the newly proffered information is not sufficient to combat the Court's previous decision of detention.

At Densmore's appeal hearing, Judge Du found that Densmore presented a risk of flight for a number of reasons, including the nature and circumstances of the underlying offense, weight of the evidence against Densmore, and Densmore's history and characteristics. ECF. No. 34 at 4-5. Specifically with respect to Densmore's history and characteristics, Judge Du found "the Revised Report indicate that Defendant lacks the sort of ties that would reasonably assure his appearance at trial." *Id.* at 5.

Densmore has presented very little, if any, new information that would impact that finding. In Judge Du's Order detaining Densmore, it was clear that one of the major concerns for the Court was the fact that the person Densmore would be residing with—Ms. Durant— had only known him for "a couple weeks." *Id.* In Densmore's Motion to Reopen Detention, it becomes clear that the new proposed residence is not that different from that of Ms. Durant's. In Densmore's motion, he admits he has not known either Ms.

McIntyre or Mr. Palmer for more than a couple of months, as he only reconnected with them for the first time earlier this year.

In deciding to release Walker and Haynes, the Court noted that both Walker and Haynes had significant and longstanding family ties, but found Densmore posed a flight risk, in part, because he did not and because he had only known Ms. Durant for a couple of weeks. Densmore's relationship with both Mr. Palmer and Ms. McIntyre is more analogous to that of Densmore and Ms. Durant, than that of Walker and his uncle or other family ties.  Because the new relationships Densmore presents are only slightly stronger than that of his to Ms. Durant, as he self-admits he has only just reconnected with them for the first time a couple months ago, they therefore do not provide the sort of significant family ties that would be necessary to assure Densmore's appearance in future court hearings. He has no strong ties to either the family, that residence, or to the state of Nevada or Michigan to the extent that would be necessary to assure his appearance in court.

The remaining history and characteristics, that Judge Du found also found weighed against release, still remain the unchanged. Densmore's criminal history and prior failures to appear support detention.  Specifically, that Densmore had been convicted of Domestic Assault and Battery in 2019 for beating a female victim with an aluminum pole; had been arrested for contempt of court; and had prior failures to appear in 2014, 2016, and 2018. Judge Du likewise found these factors weighed against release. "The contempt of court charge, and failures to appear, weigh against finding that the Court could reasonable expect defendant to appear for hearings and trial in this case." ECF No. 34 at 6.  "Especially considering that these are the most serious charges defendant has ever faced.  If he failed to

appear for less serious charges, he is at least arguably less likely to appear to face the more serious charges he faces here." *Id.* at FN 6.

In sum, Judge Du found "all of this said, the Court understands from the Revised Report that Defendant has lived in Las Vegas since he was brought here as a foster child at age six, does not have a passport, and has never really traveled much outside of Las Vegas, except to stay with his biological parents in Michigan. The Court therefore does not question that Defendant considers Las Vegas home. The Court instead finds it problematic that Defendant lacks any of the ties to Las Vegas—a current job, a stable residence, family members—that would assure his appearance at pretrial hearings and trial." ECF No. 34 at 7. There is nothing about the information presented in Densmore's motion that addresses or helps to mitigate any of the other listed concerns provided by the Court in support of Detention. Densmore remains both a danger to the community and a flight risk.

Likewise, the nature and circumstances of the offense charged weigh heavily in favor of detention. In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence, a Federal crime of terrorism, or a crime involving an explosive or destructive device. See 18 U.S.C. § 3142(g)(1).

Indeed, Congress recognized the seriousness of the charged offense by specifically enumerating 18 U.S.C. § 844(i) among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Specifically, Section 844(i), which carries a maximum term of 20 years imprisonment, is "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code,

for which a maximum term of imprisonment of 10 years or more is prescribed," see 18 U.S.C. § 3142(e)(3)(C), and therefore gives rise to a presumption of detention.

Defendant Densmore faces a mandatory minimum sentence of five years in prison and up to a maximum sentence of twenty years. "The length of Defendant's potential sentence increases the risk that he will flee because the possibility of a lengthy sentence incentivizes fleeing, where a shorter potential sentence might not. *See Townsend*, 897 F.2d at 995 (finding that the district court reasonably determined that defendants' lengthy sentence provided them with greater incentive to flee)." ECF No 34, 4-5.

With regard to the nature of the offense, Arson is a dangerous crime—particularly when a fire is set during protest. It is dangerous not only the first responders, but also to peaceful protesters and innocent bystanders, businesses, and residences in the area. In this case, the Densmore filmed his codefendants setting fire to a police car, apparently without regard to potentially igniting the car's gas tank or any ammunition in the vehicle, causing even more destruction and requiring additional first responders to navigate their way through an already chaotic scene. Further, the fact that after the events took place, Densmore chose to pose the video to his social media account supports that he lacked any sort of remorse for the actions of himself or those of any of his codefendants.

The weight of the evidence in this case is overwhelming. The defendants recorded themselves laughing and setting fire to the LVMPD vehicle. Moreover, the defendant made a post-*Miranda* confession. Although weight of the evidence is not accorded as much weight in this analysis, 18 U.S.C. § 3142(g) nevertheless requires the Court to consider the nature of the offense and evidence of guilt, and may be considered in relation to the likelihood that a defendant will pose a danger to the community if released. *See Motamedi*, 767 F.2d at 1408

(9th Cir. 1985); *cf. United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) ("[e]vidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community").

The fact that the defendant participated by video recording the arson to which he confessed and posted to social media, and the severity of the punishment he faces if convicted, cause this factor to weigh heavily in favor of detention.

As to the nature and seriousness of the danger to any person or the community that would be posed by Densmore's release, Densmore's actions both during and after the incident show he lacked any sort of remorse that might support his claim that he no longer poses a severe and ongoing risk to the community. His actions were not confined to an isolated incident. A second video recording demonstrates that the defendants caused damage to LVMPD vehicles at least three different times on the night of the offense. First they stood on the car, then they bashed in a windshield and window of the police vehicle (or so they joked in the video), then they left the protest to go purchase gasoline for the sole purpose of lighting a police car on fire, and then in the last incident the defendants chose to destroy the vehicle completely by lighting it on fire. After this was completed, Densmore chose to post his acts onto social media for all to see. Even more concerning than just the number of incidents, is the escalation of violence with each offense. This escalating behavior shows the acts became gradually emboldened and dangerous, and cuts against any argument that the defendant was just caught up in the moment or felt remorse for his actions.

Additionally weighing against release is the risk that Densmore may engage in similar conduct at future protests if released. The circumstances of the offense shows that he was acutely aware of the danger his actions posed to the public, yet he acted in total disregard of

the law.  Neither an order of home confinement or GPS monitoring is a physical tether that would prevent defendant Densmore from leaving his residence to participate in additional violence.

### IV. CONCLUSION

The Honorable Du deemed Densmore a flight risk based on 18 U.S.C. § 3142(g) factors.  The information proffered by Densmore is not information sufficient to reopen the detention hearing. Additionally, even if this information would have been presented at the detention hearing, the outcome would have been the same.  Therefore, Densmore's motion to reopen his detention hearing should be denied

Dated this 31st day of June, 2020.

Nicholas A. Trutanich
United States Attorney


*/s/ Stephanie N. Ihler*
STEPHANIE N. IHLER